IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 4, 2005 Session

## CITY OF KNOXVILLE v. ENTERTAINMENT RESOURCES, LLC.

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Knox County**
**No. 140736-2     Daryl Fansler, Chancellor**

---

**No. E2002-01143-SC-R11-CV - Filed June 29, 2005**

---

We granted this appeal to determine the constitutionality of a Knoxville city ordinance regulating the location of adult businesses.  The chancery court upheld the ordinance and enjoined operation of the defendant's video store after finding that it fit the definition of an adult bookstore and was located within 1,000 feet of prohibited areas and therefore was operating in violation of the ordinance.  The Court of Appeals reversed on the grounds that the ordinance's definition of adult bookstores is unconstitutionally vague.  Because we have also determined that the ordinance is unconstitutionally vague under the United States and Tennessee Constitutions, we affirm the decision of the Court of Appeals but on the separate grounds set forth herein.  We remand to the trial court for an assessment of the amount of damages incurred by the defendant as a result of the chancery court's injunction.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Affirmed**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.  FRANK F. DROWOTA, III, C.J., filed a concurring opinion.

Angela R. Bolton and W. Morris Kizer, Knoxville, Tennessee, for the Appellant, City of Knoxville.

Philip N. Elbert and W. David Bridgers, Nashville, Tennessee, and Richard L. Gaines, Knoxville, Tennessee, for the Appellee, Entertainment Resources, LLC.

### OPINION

In 1979, the Knoxville City Council adopted an ordinance regulating, among other things, the location of "adult businesses."  At all times relevant to this appeal, Knoxville City Code section 16-468 ("the ordinance") provided that adult businesses could not be located within 1,000 feet of: a residentially-zoned district; an area devoted to recreational activity; or an establishment selling

alcoholic beverages. The ordinance included adult bookstores in its definition of adult businesses. An adult bookstore was defined as:

> an establishment having as a <u>substantial or significant portion of its stock and trade</u> books, magazines and other periodicals, videotapes or other electronic media which are distinguished or characterized by their emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas, or an establishment with a segment or a section devoted to the sale or display of such material.

Knoxville City Code § 16-468(a) (emphasis added). The parties dispute whether the phrase "substantial or significant portion of its stock and trade" is impermissibly vague under the United States and Tennessee Constitutions.

## Background

The City of Knoxville filed a complaint in Knox County Chancery Court seeking to enjoin the defendant, Entertainment Resources, from operating its store in alleged violation of the ordinance. The following facts were developed before the chancery court and stipulated by the parties.

On August 3, 1998, Entertainment Resources opened a store called Fantasy Video at 6422 Papermill Road in Knoxville, Tennessee. Entertainment Resources also operated two stores in Nashville and one in Columbia, Tennessee. It planned to open two Knoxville stores in addition to Fantasy Video.

Fantasy Video, like Entertainment Resources' other stores, rented and sold videotapes for off-site viewing. When Fantasy Video opened, its inventory consisted of 80% adult or sexually explicit, "X-rated" videos and 20% family or general videos. General videos were displayed in the store's "front room." Adult videos were displayed in the store's "back room," which was restricted to patrons 18 years of age and older.

Under the spacing provisions of the Knoxville ordinance, an "adult business" could not legally locate at the site of the Fantasy Video store. It was stipulated that the site was located next door to the New Mexicali Rose restaurant, which sold beer and liquor; within 1,000 feet of a Boy Scouts administrative building, and within 1,000 feet (as the crow flies) of a residentially zoned district, although the residential district was separated from the store by Interstate 40. Entertainment Resources did not believe that the Boy Scouts building qualified as a building devoted to recreational activity and did not believe it was within 1,000 feet of a residential district. Although Entertainment Resources had full knowledge that the New Mexicali Rose restaurant sold beer and liquor, it chose to locate Fantasy Video on Papermill Road because its lawyer had advised the company that the Knoxville ordinance was unconstitutional.

Shortly after Fantasy Video opened in August 1998, the Knoxville Police Department began inspecting the store and issuing citations for violation of the ordinance on an almost daily basis. The citations alleged that Fantasy Video was an adult bookstore within the meaning of the ordinance because a substantial or significant portion of its stock and trade constituted videotapes containing material within the ambit of the ordinance.

In response to the citations, Entertainment Resources attempted to gain clarification from the police and from the City's law director as to what constituted a "substantial or significant" portion of stock and trade under the ordinance, but no guidance was provided.

At a hearing on some of the citations in Knoxville City Court, three of the officers involved in the inspections of Fantasy Video testified that they had received no guidance or training in interpreting the ordinance. When asked to define the terms in the ordinance, Sergeant Ferguson testified that he could not define "substantial" other than, "substantial means substantial as red means red; I know red when I see it, but I can't describe red." He further testified that "significant to me means a quantity of something that, compared to something else [sic]." Officer Major testified that "substantial is substantial. I don't really have an opinion on the definition of substantial, it is self-explanatory." He further explained, "significant is just like substantial, I mean, significant is significant, just as substantial is substantial." Officer Shelton similarly testified that "substantial means substantial just like the color blue means the color blue. I can't provide any other [sic]." He also testified that "significant means significant." It was stipulated that if called to testify further, the officers would testify that in making the evaluation of "substantial" and "significant" they would look to what appeared to them to be the "important part of the business."

By November 1998, Entertainment Resources had altered the composition of Fantasy Video's inventory. A police inventory on November 17, 1998, revealed that approximately 57% of the stock was general feature videos and approximately 43% of the stock was adult-oriented videos. The balance was later adjusted again; the tally from a count on December 8, 1998, was 70% general feature and 30% adult feature. Despite these alterations, the City police continued to issue citations up until the date that the preliminary injunction was entered. As of November 1998, Entertainment Resources had been cited and found guilty of fifty-three separate violations of the ordinance. As of November 16, 1998, at least 75% of Fantasy Video's revenues were generated by the "back room" videos.

The record indicates that at least one other business in Knoxville rents and sells videos that fall within the purview of the ordinance. It was stipulated that Gemstone Video Stores have separate back rooms devoted to adult-oriented videotapes and magazines. It was stipulated that the City takes the position that Gemstone Video Stores are not "adult bookstores" within the meaning of the ordinance and that the back room stock is not a substantial or significant portion of Gemstone Video's stock and trade, but the record does not show the percentage breakdown between adult videos and general videos.

In spite of the repeated citations, Entertainment Resources continued to operate Fantasy Video. Therefore, on November 4, 1998, the City of Knoxville filed a complaint for injunctive relief seeking to enjoin Entertainment Resources from operating in violation of the ordinance. In its answer, Entertainment Resources averred numerous defenses, including the claim that the ordinance is impermissibly vague under the United States and Tennessee Constitutions.

On December 10, 1998, the chancery court granted the City's motion for a temporary injunction restraining Entertainment Resources from operating an adult bookstore at the Papermill Road location. The chancery court reasoned that a temporary injunction was appropriate because Entertainment Resources had opened the Fantasy Video store on Papermill Road with full knowledge of the ordinance, and it was not disputed that the adult videos offered for sale and rental at Fantasy Video were within the purview of the ordinance. The chancery court further noted that over 75% of the store's revenue and at least 85% of its customers were attributable to the adult videos. The court opined that the general video inventory was, "despite its number . . . insignificant and insubstantial to this business's stock in trade."

For two years after the entry of the temporary injunction there was little movement on the merits of the case. Fantasy Video's general video business eventually dwindled to the point that it was only open two hours per week. In January 2001, Entertainment Resources lost its lease on the Papermill Road location and the City moved to dismiss the suit as moot. The chancery court granted that motion on July 9, 2001, except with respect to Entertainment Resources' claim for damages. Entertainment Resources argued that it was entitled to damages not only as to the Fantasy Video store, which had only operated for four months on Papermill Road prior to entry of the injunction, but also as to the two additional stores it had planned to open in Knoxville.

Nine months later, on April 15, 2002, the chancery court entered an order upholding the injunction and denying damages. The court held that because Entertainment Resources was in "direct violation" of the ordinance, it was not entitled to challenge it as vague. The court also held that the ordinance was a constitutional time, place and manner restriction aimed at combating the secondary effects of adult businesses.

Entertainment Resources appealed. The Court of Appeals reversed the chancery court, reasoning that because neither the City nor the enforcing officers could define the terms "substantial" or "significant," and because the imprecision of the terms prevented "'men of common intelligence'" from understanding the ordinance, the ordinance was "unconstitutionally vague and, therefore, unenforceable." The Court of Appeals remanded to the trial court for a determination of damages and attorney's fees. The appellate court rejected the City's argument that Entertainment Resources' damages as to the Fantasy Video store were too speculative for recovery. The court declined, however, to instruct the trial court to award damages for the second and third planned, but unopened, stores, finding that those damages were too speculative to permit recovery. We granted review and now affirm the Court of Appeals on the separate grounds set forth below.

## Analysis

### *Standard of Review*

Interpretation of statutes and ordinances is a question of law which we review de novo. See State ex rel. Pope v. U.S. Fire Ins. Co., 145 S.W.3d 529, 533 (Tenn. 2004).

### *The Vagueness Doctrine*

The Fourteenth Amendment to the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." Article I, section 8 of the Tennessee Constitution provides an identical protection; as we have often observed, "the 'law of the land' proviso of our constitution is synonymous with the 'due process of law' provisions of the federal constitution." State ex rel. Anglin v. Mitchell, 596 S.W.2d 779, 786 (Tenn. 1980) (citing Daugherty v. State, 393 S.W.2d 739 (Tenn. 1965)).

Due process of law requires, among other things, notice of what the law prohibits. Laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). Criminal statutes "must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited . . . .'" Davis-Kidd Booksellers, Inc. v. McWherter, 866 S.W.2d 520, 532 (Tenn. 1993) (quoting Kolender v. Lawson, 461 U.S. 352, 358 (1983)). A statute is unconstitutionally vague, therefore, if it does not serve sufficient notice of what is prohibited, forcing "'men of common intelligence [to] necessarily guess at its meaning.'" Davis-Kidd, 866 S.W.2d at 532 (quoting Broadrick v. Oklahoma, 413 U.S. 601, 607 (1973)); see also Leech v. Am. Booksellers Ass'n, Inc., 582 S.W.2d 738, 746 (Tenn. 1979).

In addition to the requirement of notice, the vagueness doctrine requires that statutes provide "minimal guidelines to govern law enforcement." Davis-Kidd, 866 S.W.2d at 532. Because "[a] vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application," Grayned, 408 U.S. at 108-09, "the requirement that a legislature establish minimal guidelines to govern law enforcement" is the more important aspect of the vagueness doctrine. Smith v. Goguen 415 U.S. 566, 574 (1974).

Vague laws implicating the First Amendment to the United States Constitution and Article I, section 19 of the Tennessee Constitution are subject to a more stringent standard than laws in other contexts because of the danger of chilling protected speech. Davis-Kidd, 866 S.W.2d at 531. "Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of

reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts." Smith, 415 U.S. at 573.[1]

With these principles in mind, we turn to the question of whether the ordinance is unconstitutionally vague.

*Validity of the Ordinance*

The City argues that the terms "substantial" and "significant" are familiar terms capable of ready understanding by persons of ordinary intelligence. Moreover, argues the City, we must construe "substantial" and "significant" in the context of the statute as a whole. Entertainment Resources argues that "substantial" and "significant" are unconstitutionally vague because the terms have no fixed meaning.

In evaluating a law, such as the Knoxville ordinance, that "affects communication protected by the First Amendment," we may consider a challenge to its facial validity regardless of whether or not the law is vague as applied to the defendant if "the statute's deterrent effect on legitimate expression is . . . both real and substantial and if the statute is [not] readily subject to a narrowing construction by the state courts." Young v. Am. Mini-Theaters, 427 U.S. 50, 60 (1976) (internal quotations omitted);[2] see also U. S. v. Mazurie, 419 U.S. 544, 550 (1975); NAACP v. Button, 371 U.S. 415, 432-33 (1963). Here, the deterrent effect was indeed substantial; Entertainment Resources was forced to close its doors and abandon its plans to open a second and third store. Moreover, as we explain below, the ordinance is not susceptible to a narrowing construction. For the reasons that follow, we conclude that the Knoxville ordinance is vague and invalid on its face.

First, the inability of the officers charged with enforcing the ordinance to define its key terms weighs heavily against the ordinance's constitutionality. Knoxville Police Officers Ferguson, Major, and Shelton all testified that they were unable to define "substantial." The officers testified that the City had not instructed them as to what constituted a substantial portion of sexually-explicit material but that they, personally, knew what "substantial" meant. As Entertainment Resources points out, however, "I know it when I see it" is not a constitutionally-sound standard. Particularly when speech

---

[1] The concurring opinion suggests that this is a case involving an overbreadth analysis. The issue before this Court, however, is not whether the ordinance reaches both protected and unprotected conduct, but whether the ordinance is unclear in its prohibitions. Although "vagueness and overbreadth [are] logically related and similar doctrines," Kolender, 461 U.S. at 358 n.8, they are distinct concepts. See, e.g., Davis-Kidd, 866 S.W.2d at 523-29, 531-32.

[2] The concurring opinion notes that the Court in Young refused to consider the defendants' vagueness challenge because the challenged ordinances "unquestionably" applied to the defendants. The Court so held, however, only *after* first concluding that the ordinances at issue did not create a significant deterrent effect and were "readily subject to a narrowing construction by the state courts." Young, 427 U.S. at 60-61. The concurring opinion also notes that the ordinance upheld by the Court in Young contained the same "substantial or significant" definition with regard to adult bookstores as does the Knoxville ordinance we consider here. However, Young addressed a challenge to an entirely separate section of the ordinance, and the Court in Young did not pass on the constitutionality of the definition at issue in this case.

is being regulated, the Constitution demands that government bodies make a greater attempt to define what conduct is prohibited to avoid chilling protected speech.

As written, the determination of what constitutes a "substantial or significant portion" of a business's "stock and trade" under the ordinance is an entirely subjective one. The ordinance gives no objective guidance to businesses regulated by the ordinance or officials charged with its enforcement. "Accordingly, it neither gives notice to ordinary people . . . nor sufficient guidance to law enforcement officials to prevent arbitrary law enforcement." Davis-Kidd, 866 S.W.2d at 532. This type of vague, "standardless" drafting is precisely what the Due Process clause prohibits, because it "allows policemen, prosecutors, and juries to pursue their personal predilections. Legislatures may not so abdicate their responsibilities for setting the standards of the criminal law." Smith, 415 U.S. at 575.

We note that the City objects to using the testimony of Officers Ferguson, Major, and Shelton to demonstrate that the ordinance is unconstitutionally vague. The City points out that the content, meaning and application of the ordinance is not a matter of fact to be proven by witness testimony but is rather a matter of law to be construed by the Court. State ex rel. Pope, 145 S.W.3d at 533; see also Dempsey v. Correct Mfg. Corp., 755 S.W.2d 798, 806 (Tenn. Ct. App. 1988). As the Court of Appeals correctly held, however, here the witnesses' testimony illustrates the issue at the very heart of the vagueness challenge: enforcement of the ordinance was left to the "personal predilections" of the police. Smith, 415 U.S. at 575. The officers' confusion demonstrates that the ordinance fails to provide ascertainable standards for law enforcement.

Second, the terms as used in the context of the ordinance cannot be defined with any degree of precision. In our view, the fact that the terms "substantial" and "significant" are common and familiar terms does not support the argument that they are constitutional as used in the ordinance. The words "big" and "small" are certainly common and familiar as well, but if used to describe prohibited conduct, they would no more pass constitutional muster than do the terms in this ordinance. For it is not the words themselves that must be capable of ready understanding by persons of ordinary intelligence, but the *conduct that is prohibited* that must be readily understood.[3]

To bolster its argument that "substantial" and "significant" are constitutional when used in statutes, the City points out that the terms appear hundreds of times in state and federal statutes. See 15192 Thirteen Mile Rd., Inc. v. City of Warren, 626 F. Supp. 803, 820 (E.D. Mich. 1985). As the City itself notes, however, we must read those terms in the context of the ordinance. The terms "substantial" and "significant" in this ordinance merely tell us that if a business has a certain, undefined amount of sexually-explicit material, then it is subject to the location restrictions of the ordinance. What is "substantial" or "significant" to one person may just as easily be "unsubstantial"

_____

[3] The concurring opinion asserts that "substantial" is capable of definition, noting that this Court defined "substantial" in In re Valentine, 79 S.W.3d 539, 548-49 (Tenn. 2002). The definition of substantial offered in that case was "'of real worth and importance.'" Id. at 548 (quoting Black's Law Dictionary 1428 (6th ed. 1990)). It is difficult to see how substituting "of real worth and importance" for "substantial" would clarify what portion of adult-oriented stock and trade a business could carry without being subject to the ordinance.

or "insignificant" to another. The fact that the City itself was unsure what amount of material the terms were intended to reach is demonstrated both by the City's failure to offer guidance to Entertainment Resources and by the confusion of the officers charged with enforcing the ordinance.

Third, the City declined to give any limiting construction to the ordinance, and we are unable to impose a narrowing definition to salvage its constitutionality. As the concurring opinion notes, this Court has cautioned that "[c]ourts should consider any limiting instructions of the challenged statute that state authorities have proffered." State v. Burkhart, 58 S.W.3d 694, 697 (Tenn. 2001). In this case, however, no such instruction has been proffered, either to Entertainment Resources or to this Court. Entertainment Resources requested that the City tell it how to reapportion its stock in order to comply with the ordinance. The City refused. Entertainment Resources then altered the composition of the Fantasy Video stock from 80% adult-oriented material to 57%, and finally to 30%. After each alteration, the City continued to maintain that Fantasy Video was in violation of the ordinance. In our view, requiring a party to engage in this sort of guessing game is a clear violation of due process. The "absence of any ascertainable standard for inclusion and exclusion is precisely what offends the Due Process Clause." Smith, 415 U.S. at 578.

The concurring opinion states that we failed to "consider whether the ordinance is readily susceptible to a narrowing construction which would alleviate any perceived unconstitutional vagueness." But in the absence of any hint from the City, we are at a loss as to how to impart meaning to the terms "substantial" and "significant" without rewriting the ordinance. The concurring opinion points out that a similar Nashville ordinance defines an adult video store as an "establishment having a majority of its stock or a majority of its floor space dedicated to" adult material. A previous version of that ordinance, invalidated as unconstitutionally vague in Ellwest Stereo Theater, Inc. v. Boner, 718 F. Supp. 1553, 1581 (M.D. Tenn. 1989), had used the terms "substantial" and "significant." While we agree that "majority" is clearer than "substantial," such a drastic revision by this Court would amount to impermissible judicial legislation. "[C]ourts may supply words when reasonably called for. Nevertheless, it is the prerogative of the legislature, and not the courts, to amend statutes." In re Swanson, 2 S.W.3d 180, 186-87 (Tenn. 1999) (citations omitted). In the Nashville case, it was the Nashville City Council, a legislative body, that supplied the narrowing construction, not the courts.

It is difficult to understand the City's reluctance to further clarify the ordinance. "Although due process does not require impossible standards of clarity, this is not a case where further precision in the statutory language is either impossible or impractical." Kolender, 461 U.S. at 361 (internal quotation and citation omitted). Surely the City must have had some idea of what amount of sexually-explicit material was tolerable under the ordinance, particularly given the fact that the record shows that the City takes the position that Gemstone Video Stores, which also stock sexually-explicit videotapes, was not in violation of the ordinance. See, e.g., Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 503-04 (1982) (ordinance regulating sale of drug paraphernalia not vague, in part because village attorney issued guidelines to businesses affected by ordinance).

In the absence of any articulable standards from the City, we must conclude that the ordinance is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971).

Finally, the City argues that Entertainment Resources may not challenge the ordinance as facially vague because the Fantasy Video store was clearly within the purview of the ordinance. Burkhart, 58 S.W.3d at 699. As we have explained, however, in some circumstances even a party who is within the ambit of an ordinance may challenge it as facially vague if protected communication is at issue. Young, 427 U.S. at 59-60. Moreover, the facts of this case belie the City's insistence that Entertainment Resources fell within the purview of the ordinance, because, as we have explained, the ordinance has no boundaries. Entertainment Resources reduced its stock from 80% adult videos to 30% without, evidently, locating the upper edge of what constituted an acceptable portion of stock devoted to adult-oriented material. Given the City's inability to articulate any constitutionally-meaningful standards for the ordinance's definition of adult bookstores, we conclude that the ordinance is unconstitutionally vague and unenforceable.

*Remaining Issues*

Having determined that the definition of "adult bookstores" in Knoxville City Code section 16-468 is void for vagueness, we need not reach the parties' arguments as to the validity of the injunction entered by the trial court. We also decline to reach Entertainment Resources' arguments that such an ordinance is not a valid time, place and manner regulation, that it failed to provide reasonable alternative avenues of communication, that such an ordinance may never be justified using the "secondary effects" doctrine under Article 1, section 19 of the Tennessee Constitution, and that the injunction was an unconstitutional prior restraint.

*Damages*

Because the chancery court held that Entertainment Resources had been properly enjoined from operating Fantasy Video pursuant to the ordinance, it did not address Entertainment Resources' damages. We agree with the Court of Appeals that Entertainment Resources is entitled to a determination of damages as to the Fantasy Video Store on Papermill Road, but that it is not entitled to damages as to the planned, but unopened, second and third Knoxville stores. We remand to the chancery court to assess the amount of Entertainment Resources' damages and to determine the propriety of awarding attorney's fees.

**Conclusion**

Having considered the record and applicable authority, we hold that Knoxville City Code section 16-468 is vague and unenforceable under the United States and Tennessee Constitutions. We remand to the chancery court for a determination of Entertainment Resources' damages flowing

from that court's injunction.  Costs of the appeal are taxed to the appellant, City of Knoxville, and its surety, for which execution may issue if necessary.

                                         _____

                                            E. RILEY ANDERSON, JUSTICE