### CITY OF CLEVELAND

v.

### Mike WADE dba Babylon Adult Bookstore.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Nov. 14, 2005 Session.

Feb. 28, 2006.

Permission to Appeal Denied by Supreme Court Aug. 21, 2006.

Michael M. Raulston, Chattanooga, Tennessee, for the appellant, Mike Wade dba Babylon Adult Bookstore.

John F. Kimball, Cleveland, Tennessee, and Ronald D. Wells and Stacy Lynn Archer, Chattanooga, Tennessee, for the appellee, City of Cleveland.

## OPINION

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

The defendant, Mike Wade, operates an adult establishment in Bradley County under the trade name of Babylon Adult

Bookstore.[1] He submitted an application to the City of Cleveland ("the City"), seeking to establish a second adult book and video store, this one to be located within the city limits of Cleveland. The City denied Wade's application. It did so because it determined that the proposed store was a "sex outlet" and that Wade intended to operate it at a location within 750 feet of a residentially-zoned district, in violation of the pertinent zoning ordinance. The Cleveland City Council, and the trial court following a bench trial, affirmed the denial of the application. Wade appeals, arguing that the applicable ordinances of the City are content-based and unconstitutionally vague. We affirm the trial court.

## I.

Wade's existing adult retail outlet, which was opened in 2003, is located in Bradley County, but outside the city limits of Cleveland. Its merchandise consists primarily of adult videotapes, but the store also sells adult magazines, sexual toys, sexual devices, lotions, and lubricants. The store, according to the testimony of the investigating police officer, contains well over 200 items for sale, of which 95 to 100 percent are sexually explicit in nature.

In April, 2004, Wade advised the City of his intention to open a second store at 1480 Spring Place Road, a location which is within the corporate limits of Cleveland. The City advised Wade that he would have to submit an application for a license for an "adult-oriented establishment." The licensing ordinance, which is codified at sections 9–501 through 9–519 of the Municipal Code of Cleveland, sets forth definitions, the application process, and other applicable procedures, standards, and fees. It defines an "adult-oriented establishment" as including "adult bookstores." CLEVELAND, TENN., MUN.CODE § 9–502(1) (February 12, 1996).[2] An "[a]dult bookstore" is further defined as:

> an establishment having as a *substantial* or *significant* portion of its stock and[3] trade in books, films, video cassettes, magazines, or other periodicals, or any print or electronic media which are distinguished or characterized by the emphasis on matter depicting, describing or relating to 'specified sexual activities' or 'specified anatomical areas,' as defined below, and in conjunction therewith have facilities for the presentation of adult entertainment, as defined below, and including adult-oriented films, movies, or live entertainment for observation by patrons therein.

CLEVELAND, TENN., MUN.CODE § 9–502(2) (as amended by Ordinance No.2003–28, October 13, 2003) (emphasis added).[4] Wade completed his application and filed it along with the required $500 application fee. Greg Thomas, a planner employed by the City, then undertook the task of determining whether Wade's proposed location for his second store complied with the City's zoning ordinance. The relevant part of the zoning ordinance provides that

> [n]o sex outlet of any type shall be located within 750 feet of any of the following protected land uses: any church or

1. Since the store is located outside the city limits of Cleveland, it is not subject to the ordinances of that municipality.

2. The licensing ordinance became effective on its second reading on February 26, 1996.

3. The copies of the licensing and zoning ordinances introduced at trial contain a number of references to the language "stock *and* trade." (Emphasis added). The court wonders if the drafters of this language intended to say "stock *in* trade."

4. Ordinance No.2003–28 became effective on its second reading on October 27, 2003.

house of worship or religious institution such as a seminary or denominational agency except when located in a rented storefront or office suite; public or private licensed daycare or child care center, pre-school, kindergarten, elementary school, middle school or junior high school, or high school; residence or residential zoning district; public park, playground, greenway, recreation center, community center, or public library; private or semi-private recreational facility such as a YMCA, miniature golf course, video arcade, movie theatre, or any other type of recreational use for which at least one-third of the users are persons under age 18 with at least 100 user visits per month....

CLEVELAND, TENN., MUN.CODE tit. 14, ch. 2, § 2.0(c) (as amended by Ordinance No.2004–02, Jan. 26, 2004).[5] The zoning ordinance defines the term "sex outlet" as follows:

"Sex outlet" shall mean any *"sex media outlet"*, "sex media exhibition outlet", "sex entertainment outlet", "sex service outlet", or "sex accessories outlet" as defined herein. "Sex media" shall mean any print or electronic media (including but not limited to books, magazines, photographs, films, videocassettes, compact disc, DVD, etc.) that is characterized or distinguished by an emphasis on matter depicting "specified sexual activities" or "specified anatomical areas". "Hardcore sex media" shall mean media that is characterized or distinguished by specified sexual activities as described herein. *"Sex media outlet" shall mean an establishment having as a substantial portion of its stock and trade (substantial portion meaning over 20% of floor area, or over 20% of inventory by units or value, or over 20% of revenues, or an inventory of 200 or more units of*

*sex media, or any amount of hardcore sex media) in sex media, where the sex media is for use off-premises.* "Specified sexual activities" shall mean human genitals in a state of sexual stimulation or arousal; acts of human masturbation, sexual intercourse, contact between the mouth of one person and the genitals of another, sodomy, or bestiality; or penetration of body orifices or stimulation of a genital organ by a sex accessory as defined; or fondling or erotic touching of human genitals, pubic region, buttock, or female breasts. "Specified anatomical areas" shall include less than completely and opaquely covered human genitals, pubic region, buttocks, female breasts below a point immediately above the top of the areola; and human male genitals in a discernibly turgid state even if completely and opaquely covered.... "Sex accessories" shall mean instruments, devices, or paraphernalia designed as representatives of human genital organs or female breasts, or designed and marketed primarily for use in stimulating human genital organs; or lingerie, leather goods, and/or other items marketed or presented in a context to suggest their use in sadomasochistic practices characterized by flagellation, torture, and/or physical restraint.

CLEVELAND, TENN., MUN.CODE tit. 14, ch. 2, § 1.6 (as amended by Ordinance No.2004–02, Jan. 26, 2004) (emphasis added). Under the zoning ordinance, a "sex outlet" must be located in a Commercial Highway ("CH") zone, an Industrial Light ("IL") zone, or an Industrial Heavy ("IH") zone. The City consists of approximately 16,000 acres, 25% of which is zoned either CH, IL, or IH. The City's Planner found that the proposed location, although zoned CH, was within 200 feet of an R2 residential

5. Ordinance No.2004–02 became effective on     its second reading on March 8, 2004.

district. On that basis, he recommended that Wade's application be denied.

The City thereafter informed Wade that his application had been denied and advised him of the reason for the denial, *i.e.,* the violation of the zoning ordinance. The City, as prescribed by the licensing ordinance, refunded $250 of the $500 application fee to Wade. Pursuant to the ordinance, Wade requested a hearing before the City Council. The City Council upheld the denial, finding that Wade's proposed location for his second store was not a permitted location under the zoning ordinance because the proposed location is too close to an R2 residential district. The City then instituted this declaratory judgment proceeding. Wade filed an answer and counterclaim, alleging (1) that the definitions in the City's licensing and zoning ordinances were vague and overbroad; (2) that the zoning ordinance was so restrictive that it precluded Wade from locating anywhere inside the city limits of Cleveland; and (3) that the licensing ordinance was punitive in that it resulted in forfeiture of one-half of the $500 application fee.

Among the evidence presented at trial was the testimony of a Cleveland police officer who observed Wade's existing location three days prior to the hearing below. The officer described the store's layout and the materials offered for sale. The officer took a video camera with him and filmed the contents of the store. The trial court also heard testimony from the City's Planner, Mr. Thomas. He testified regarding the City's intent and purpose underlying the zoning ordinance. He stated that the City enacted the zoning ordinance as a way of addressing and reducing well-documented deleterious secondary effects associated with adult businesses. He testified that, in 2003, he prepared a document entitled "A Report Concerning the Impact of Sex Businesses and the Regulation of Sex Businesses in the City of Cleveland and Bradley County, Tennessee." Among other things, the report detailed the findings of other local governments with respect to secondary effects of adult businesses, including increased organized crime, public health concerns, and community deterioration. Thomas also testified regarding at least six other specific locations within the city limits of Cleveland which would be properly zoned for a "sex outlet" under the zoning ordinance. He also noted that, during the pendency of Wade's appeal to the City Council, he, Thomas, received a telephone call from Wade, inquiring about another specific site within the city limits of Cleveland. Thomas analyzed the identified property, and informed Wade that his proposed store could be lawfully operated at the subject location.

After taking the matter under advisement, the trial court dismissed Wade's counterclaim, finding

> first, that the City ordinances read together are not unconstitutionally vague or overly broad; second, that the zoning ordinance has as its "predominate concerns" the undesirable secondary effects of adult businesses on the areas in which they are located rather than restriction of the content of the material to be sold; third[ ], that the zoning ordinance does not result in precluding any lawful place for [Wade] to operate in the city but allows for reasonable alternative avenues of communication; and fourth, that the retention by the City of part of the application fee is not unconstitutionally punitive.

(Footnote omitted). Wade appeals the trial court's judgment.

## II.

This appeal presents the following questions for our review: (1) Whether the

City's zoning ordinance is a constitutionally-valid time, place, and manner regulation; and (2) whether the City's licensing and zoning ordinances are unconstitutionally vague; and (3) whether the City's retention of a portion of the application fee is punitive in nature.

## III.

Our review is *de novo* upon the record of the proceedings in the trial court. Tenn. R.App. P. 13(d). We accord a presumption of correctness to the trial court's factual findings, unless the evidence preponderates against those findings. *Id.* As to the trial court's conclusions of law, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.,* 58 S.W.3d 706, 710 (Tenn.2001). The interpretation of an ordinance is a question of law. *City of Knoxville v. Entertainment Resources, LLC,* 166 S.W.3d 650, 655 (Tenn.2005). Generally speaking, courts have a limited role to play with respect to the validity of a zoning ordinance. *See Fallin v. Knox County Bd. of Commissioners,* 656 S.W.2d 338, 342–43 (Tenn.1983).

## IV.

■ Wade contends that the City's zoning ordinance violates the guarantees of free speech and free expression found in the First Amendment to the United States Constitution and Article I, Section 19 of the Tennessee Constitution.[6] We must determine, as a threshold matter, if the ordinance is a "content-neutral" time, place, and manner regulation or if it is a "content-based" restriction. *See City of Ren-*

*ton v. Playtime Theatres, Inc.,* 475 U.S. 41, 46–47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986). If the ordinance is directed at the content of the sexually-explicit message conveyed by the material, then the ordinance is presumptively invalid and will be subject to strict scrutiny. *See id.,* 475 U.S. at 47, 106 S.Ct. at 928–29. On the other hand, if the ordinance is "justified without reference to the content of the regulated speech," or the ordinance serves a purpose that is unrelated to the contents of the material, the ordinance is considered content-neutral. *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989) (quoting *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984)). Thus, if the ordinance is targeted at combating the negative secondary effects of the protected expression, then it may be upheld as a reasonable time, place, and manner restriction. *See City of Renton,* 475 U.S. at 49, 106 S.Ct. at 929–30.

■ The zoning ordinance in the instant case is a content-neutral time, place, and manner regulation of adult businesses. The evidence presented at trial establishes that the Cleveland City Council, in enacting the zoning ordinance, sought to combat the deleterious secondary effects associated with adult businesses, such as the increase in criminal activity and neighborhood deterioration. The preamble to the ordinance recites that the City Council found that "sex businesses or sex outlets ... have detrimental impacts on public safety, public health, property values, community economic conditions, and the reasonable use and enjoyment of private and public property." Furthermore, the preamble states that

---

**6.** Article I, Section 19 of the Tennessee Constitution "should be construed to have a scope at least as broad as that afforded those freedoms by the first amendment of the United States Constitution." *Leech v. American Booksellers Ass'n, Inc.,* 582 S.W.2d 738, 745 (Tenn.1979).

it [was] not the intention of the City Council of [the City] to enact an ordinance that unlawfully suppresses any speech activities that are protected by the First Amendment, but neither is there an intention to condone or legitimize obscene or unlawful materials or activities; and ..., zoning is an appropriate means to regulate land uses, including sex outlets, as to the time, place, and manner of development and operation so as to mitigate the impacts of a given land use upon the public.

The evidence also shows that the City Council considered the study prepared by the City's Planner in 2003. *See City of Renton,* 475 U.S. at 51–52, 106 S.Ct. at 931 (noting that local governments may rely upon the experiences and findings of other local governments in enacting its ordinances). Because the evidence demonstrates that the ordinance was aimed at combating the adverse secondary effects of adult businesses, we find that the City's zoning ordinance is content-neutral.

Having determined that the City's zoning ordinance is a "content-neutral" reasonable time, place, and manner regulation, we must now determine whether the zoning "ordinance is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Id.* at 50, 106 S.Ct. at 930; *see United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968) (stating that a content-neutral law will pass constitutional muster if: it is within the constitutional powers of the government; it furthers an important or substantial governmental interest; the governmental interest is unrelated to the suppression of free expression; and the incidental restriction on First Amendment freedoms is no greater than is necessary to further that interest). Courts have consistently held that the prevention of crime, disease, and neighborhood deterioration

associated with adult businesses are substantial governmental interests, and that the combating of these secondary effects is an interest not directly related to the suppression of protected speech. *City of Renton,* 475 U.S. at 50, 106 S.Ct. at 930; *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 71–72, 96 S.Ct. 2440, 2453, 49 L.Ed.2d 310 (1976); *American Show Bar Series, Inc. v. Sullivan County,* 30 S.W.3d 324, 336 (Tenn.Ct.App.2000). The City Council's decision to place restrictions on the location of adult businesses was not arbitrary in this case, and we do not find the ordinance to be more burdensome than necessary in furthering the City's interest in combating the well-documented adverse secondary effects associated with adult businesses.

Next, we turn to the question of whether the zoning ordinance allows alternative avenues of communication. Wade argues that the ordinance, particularly the provision requiring a certain distance (*i.e.,* 750 feet) between "sex outlets" and other non-adult-oriented businesses (*i.e.,* churches, schools, residences, etc.), leaves no available location for the operation of his business. In addressing this argument, the trial court found that

> [t]he controlling issue is not whether the land is immediately available or whether the cost is commercially reasonable. These are business and market matters. The issue, as in any zoning case, is whether there is land available consistent with the government's legitimate concerns. There obviously is in this case.

We agree with the trial court. As noted earlier, the City's Planner pointed to the existence of at least six other specific locations where a "sex outlet" could be legally located within the city limits of Cleveland. The evidence further establishes that the defendant inquired about another piece of property that satisfied the zoning ordi-

nance. Whether or not the "available" land is currently for sale or lease is not relevant to our analysis. *City of Renton,* 475 U.S. at 54, 106 S.Ct. at 932 ("That [an adult business] must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation."). Additionally, Wade's inability to afford the asking price of the "available" land is also irrelevant. *Id.* ("[W]e have never suggested that the First Amendment compels the Government to ensure that adult theaters, or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices."). Given the evidence before us, we cannot say that the zoning ordinance is so restrictive that it provides no location or alternative for Wade's lawful operation.

## V.

■■■ Wade next contends that the zoning and licensing ordinances are unconstitutionally vague. The First Amendment to the United States Constitution and Article I, section 19 of the Tennessee Constitution mandate that laws implicating the area of freedom of expression are required to have a greater degree of specificity than laws in other contexts, so that citizens are not "chilled" from exercising their constitutional right to free expression. *Davis–Kidd Booksellers, Inc. v. McWherter,* 866 S.W.2d 520, 531 (Tenn.1993). "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). An ordinance is unconstitutionally vague when a person of "common intelligence must necessarily guess at its meaning." *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973) (quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)).

Wade attempts to argue that the recent Tennessee Supreme Court case of *City of Knoxville v. Entertainment Resources, LLC,* 166 S.W.3d 650 (Tenn.2005), requires a finding that the City's licensing and zoning ordinances are unconstitutionally vague. In *City of Knoxville,* the City had a zoning ordinance in place which prohibited an "adult bookstore" from locating within 1,000 feet of a residentially-zoned district, a recreational activity area, or an establishment selling alcoholic beverages. *Id.* at 652. The adult business involved in the case asserted that the ordinance was vague because it could not determine whether or not the zoning ordinance applied to its business. Knoxville's ordinance defined an "adult bookstore" as follows:

> an establishment having as a *substantial or significant portion of its stock and trade* books, magazines and other periodicals, videotapes or other electronic media which are distinguished or characterized by their emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas, or an establishment with a segment or a section devoted to the sale or display of such material.

*Id.* (emphasis in opinion). The issue in the *City of Knoxville* case then became whether the phrase "substantial or significant portion of its stock and trade" was impermissibly vague under the United States and Tennessee Constitutions. *Id.* The Court held the Knoxville ordinance to be vague and invalid, emphasizing the fact that the ordinance failed to articulate standards or define the terms "substantial" and "significant." *Id.* at 656. Several Knoxville police officers, who were charged with enforcing the ordinance, testified that they could not objectively define what was meant by the terms "substantial" and "significant." *Id.* at 653. The enforcing officers were left to determine

their own subjective meaning of what constituted a "substantial" or "significant" portion of the business' stock and trade. *Id.* Thus, "[the ordinance] neither [gave] notice to ordinary people . . . nor sufficient guidance to law enforcement officials to prevent arbitrary law enforcement." *Id.* at 657 (quoting *Davis–Kidd Booksellers, Inc.*, 866 S.W.2d at 532).

The defendant's application was denied under the *zoning* ordinance, not under the *licensing* ordinance. The City's zoning ordinance defines a "sex outlet" as "any 'sex media outlet' . . . an establishment having as a *substantial* portion of its stock and trade *(substantial portion meaning over 20% of floor area, or over 20% of inventory by units or value, or over 20% of revenues, or an inventory of 200 or more units of sex media, or any amount of hardcore sex media)* in sex media." Cleveland, Tenn., Mun.Code tit. 14, ch. 2, § 1.6 (emphasis added). Therefore, unlike the ordinance in the *City of Knoxville* case, the zoning ordinance in this case objectively defines and clarifies exactly how to determine what constitutes a "substantial" portion of stock in trade. In his brief, Wade attempts to question the ordinance's definition of "substantial" by asking: "which criteria should I use? 20% floor space, 20% revenue, 200 items of inventory, which?" This ordinance answers this question. The fact that the definition of "substantial" lists several different "criteria" for determining if a business falls within the definition of a "sex media outlet" does not create constitutionally-impermissible vagueness. The ordinance in question uses plain language, the meaning of which is clear. It is obvious that a business will be considered a "sex media outlet," and thus, a "sex outlet," if that business has 20% of its floor area devoted to "sex media," *or* if 20% of its inventory are items of "sex media," *or* if 20% of its revenue comes from the sale of "sex media," *or* if the business has 200 units in inventory of "sex media" *or* any

amount of "hardcore sex media." It is clear that if a store falls within any one of the various definitions, it is a "sex outlet" subject to the provisions of the ordinance. It should be noted that Wade admitted that at least 50 percent of the merchandise at his existing store consisted of sexually-explicit material.

Wade argues that the definition of "adult bookstore" used in the City's "adult-oriented establishments" *licensing* ordinance is unconstitutionally vague. As in the *City of Knoxville* case, the licensing ordinance uses the same "substantial or significant portion of its stock and trade" language without further defining what constitutes a "substantial" or "significant" portion. The trial court found that the constitutionality of the licensing ordinance was not the issue because the denial of Wade's application was based upon *the zoning ordinance*, not the licensing scheme. In addition, the trial court stated that, even if it assumed that Wade had a viable issue with respect to the licensing ordinance's definition of "adult bookstore," the *zoning ordinance's* definition of "substantial" stands as a valid impediment to Wade's attempt to locate his second store at the proposed location. The facts before us are fundamentally different from those existing in *City of Knoxville*. The location selected by Wade cannot, under the clear language of the applicable zoning ordinance, be used for the business intended by him.

## VI.

■ We also note that Wade appears to again take issue with the fact that he only got $250 of the $500 application fee back after the denial of his application. The licensing ordinance, as previously noted, provides that one-half of the $500 application fee shall be refunded after an application is denied. Cleveland, Tenn., Mun. Code § 9–509. The trial court rejected Wade's argument that this portion of the

licensing ordinance was punitive in nature, stating that

the Court has been shown, and can find, no authority which will prevent the City from recovering at least part of the administrative costs associated with processing an application and investigating it to determine whether a proposed business complies with the zoning ordinance.

We agree with the trial court.

## VII.

The judgment of the trial court is affirmed. This case is remanded to the trial court for enforcement of the trial court's judgment and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Mike Wade dba Babylon Adult Bookstore.

