IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 7, 2017 Session

## CINDY BRUMFIELD ET AL. v. CITY OF MURFREESBORO ET AL.

**Appeal from the Circuit Court for Rutherford County**
**No. 69038     Mitchell Keith Siskin, Judge**

_____

**No. M2016-01569-COA-R3-CV**

_____

Homeowners filed a declaratory judgment action related to the operation of a group home in their neighborhood. Among other things, homeowners claimed that the use of the property for a group home violated the local zoning ordinance. On motions for summary judgment, the court concluded that the operation of the group home did not violate the zoning ordinance because the group home's residents constituted a "family" as defined in the ordinance. The court further concluded that the use was protected under the Fair Housing Act, 42 U.S.C. §§ 3601-3619 (Supp. 2017). We affirm the grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Phillip Byron Jones, Nashville, Tennessee, for the appellants, Cindy Brumfield, Tom Todd, and John Hawk.

David A. Ives, Murfreesboro, Tennessee, for the appellee, City of Murfreesboro.

Tracey McCartney, Nashville, Tennessee, and Larry L. Crain, Brentwood, Tennessee, for the appellees, JourneyPure, Inc., JourneyPure Management Corp., AT Project, LLC, and Jui-Lien Chou Ho.

## OPINION

## I.

In 2014, Dr. Jui-Lien Chou Ho purchased improved real property in Murfreesboro, Tennessee, known as 1306 S.E. Broad St. Following the purchase, she leased the property to AT Project, LLC. AT Project then opened Voyage Group Home, a residential addiction treatment center, in the existing residence on the property. JourneyPure Management Corp. provided staffing for the group home.

Owners of neighboring properties, including siblings Cindy Brumfield and Tom Todd and their cousin, John Hawk, were not pleased with these developments. Even prior to the group home's opening, they objected to the issuance of a building permit for improvements to 1306 S.E. Broad St.[1] But the City issued the permit despite the objections.

Unhappy with what they saw as the City's failure to enforce its own zoning ordinance, Ms. Brumfield, Mr. Todd, and Mr. Hawk filed a complaint for declaratory judgment and other relief in the Circuit Court for Rutherford County, Tennessee.[2] The complaint named as defendants AT Project, LLC and JourneyPure Management Corp.; their parent company, JourneyPure, Inc.,; and Dr. Chou (collectively, the "JourneyPure Defendants"). The complaint also named the City as a defendant.

The plaintiffs alleged that Dr. Chou's property was being "used for the commercial purpose of rehabilitating women from mental institutions and alcoholic and drug treatment centers where said individuals have been deemed to be capable of living and functioning in a community which provides continuous professional guidance." This use, according to the plaintiffs, fell within the zoning ordinance definition of a "transitional home," a use "expressly prohibited" in the zoning district encompassing S.E. Broad St. The plaintiffs further asserted that commercial enterprises were prohibited in the zoning district.

---

[1] In a letter to the city attorney, counsel "represent[ing] neighbors and other interested parties" demanded that a cease and desist letter be sent and that an injunction be issued if necessary to prevent the property from being used as a group home. Shortly after the group home opened, the assistant city attorney responded that the use complied with the zoning ordinance. An effort was made to appeal this determination to the City's Board of Zoning Appeals. But the planning director sent a letter to the homeowners informing them that the assistant city attorney's letter was not an appealable "decision."

[2] The plaintiffs originally filed in the chancery court. By agreement, the chancery court ordered the case transferred to the circuit court.

2

For relief, the plaintiffs requested the issuance of a permanent injunction preventing the JourneyPure Defendants from operating a transitional home or commercial enterprise at 1306 S.E. Broad St. The plaintiffs also sought monetary damages for the diminishment of the value of their properties and legal fees and expenses.

After answering the complaint, the JourneyPure Defendants moved for summary judgment. They claimed that the group home was protected under the antidiscrimination provisions of the federal Fair Housing Act. The City joined in the JourneyPure Defendants' motion. But the City also maintained that the operation of the group home complied with the zoning ordinance.

As the City explained, the group home, as well as the properties of the plaintiffs, fell within a zoning district designated as "RS-15, Single-Family Residential District." The City argued that the residents of Voyage Group Home qualified as a "family" within the meaning of zoning ordinance and, thus, use of the property for the group home was "permitted by right."

The trial court granted the JourneyPure Defendants and the City summary judgment and dismissed the complaint. The court agreed that the residents of the Voyage Group Home constituted a family as defined in the zoning ordinance and that a "single-family detached" dwelling was a use permitted by right under RS-15 designation. But the court also agreed that the group home might qualify as a "transitional home" or "group shelter" under the zoning ordinance, uses not permitted by right under RS-15.

In resolving the apparent conflict in the zoning ordinance in favor of the JourneyPure Defendants and the City, the court relied on two canons of statutory construction. According to the court, "[t]he first applicable canon [wa]s that, when there is a conflict between statutes which were enacted at different times, the more specific and more recently-enacted statutory provision generally controls." The zoning ordinance definition of "family" had been more recently amended than the definition of "transitional home," so the court determined that the definition of "family" took precedence over the definition of "transitional home." "The second applicable canon [wa]s that courts must, if possible, avoid a construction that places one statute in conflict with another." And, as explained by the court, only the City's interpretation of the ordinance comported with the Fair Housing Act.

In determining that the Fair Housing Act applied to the Voyage Group Home, the court considered whether the group home fell within the Act's definition of "dwelling" and was used as a "residence."

> Based on the undisputed facts in the case at bar, it is clear that the Voyage home constitutes a "dwelling" under the FHA, insomuch as it is a building that is "occupied as, or designed or intended for occupancy as, a

3

residence by one or more families." 42 U.S.C. § 3602(b). In finding that the Voyage home qualifies as a "residence" under the FHA, the Court notes that the average length of stay for the residents is 45 days, which is significantly longer than the 14.8-day average length of stay that was determined to be sufficient in Lakeside [v. Resort Enters., LP v. Bd. of Supervisors of Palmyra Township, 455 F.3d 154 (3d Cir. 2006)]. Additionally, the residents of the Voyage home treat the property like their home while they are staying there. The daily activities and general manner of living by the Voyage home residents, as set forth in great detail on pages 4-5, supra, are very similar to that of the residents of the group homes in Schwarz [v. City of Treasure Island, 544 F.3d 1201 (11th Cir. 2008)] and Lakeside, supra, both of which were found to constitute "dwellings" under the FHA. The bottom line is that the residents of the Voyage home treat the facility as their residence for the duration of their stays, and although their time at the Voyage home is temporary, that fact does not remove the protections of the FHA. *See* Connecticut Hospital v. City of New London, 129 F. Supp. 2d 123, 133-34 (D. Conn. 2001).

## II.

On appeal, Ms. Brumfield, Mr. Todd, and Mr. Hawk confine their arguments to the applicability of the Fair Housing Act. They frame the issues as follows:

I.  Whether the Fair Housing Act cloaks the corporate Defendants, so to permit them to operate a for-profit rehabilitation clinic from a house, on a residential street, zoned strictly residential (RS-15).

II. Whether the fact that the City of Murfreesboro receives federal funding provides a mechanism under the Fair Housing Act for it to refuse to enforce residential zoning laws which otherwise prohibit the operation of a for-profit rehabilitation clinic in a house, on a residential street, zoned strictly residential (RS-15).

III. Whether the trial court committed reversible error in granting a Summary Judgment that found that the provisions of the Fair Housing Act applied to the facts and in particular, that they cloaked the corporate Defendants in their operation of a for-profit rehabilitation clinic in a house, on a residential street, zoned strictly residential (RS-15).

### A.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

4

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If the moving party satisfies its burden, "the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Id.*

In this case, the party moving for summary judgment does not bear the burden of proof at trial. Consequently, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015), *cert. denied*, 136 S. Ct. 2452 (2016). Satisfying this burden requires more than a "conclusory assertion that summary judgment is appropriate," rather the movant must set forth specific material facts as to which the movant contends there is no dispute. *Id.*

If a motion for summary judgment is properly supported, the nonmoving party must then come forward with something more than the allegations or denials of its pleadings. *Id.* at 265. The nonmoving party must "by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Id.* (quoting Tenn. R. Civ. P. 56.06).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

B.

The underlying premise of the arguments of Ms. Brumfield, Mr. Todd, and Mr. Hawk is that Voyage Group Home violates the City's zoning ordinance. So we begin our analysis with an examination of the ordinance. Courts construe and interpret zoning ordinances using the same rules of construction used to interpret statutes. *City of Knoxville v. Brown*, 260 S.W.2d 264, 267 (Tenn. 1953); *Lions Head Homeowners' Ass'n v. Metro. Bd. of Zoning Appeals*, 968 S.W.2d 296, 301 (Tenn. Ct. App. 1997). If the language of the ordinance is clear, then the ordinance will be applied as written. *Lions*

5

*Head Homeowners' Ass'n*, 968 S.W.2d at 301. But if the ordinance is ambiguous, courts "resort to the customary principles of statutory construction." *421 Corp. v. Metro. Gov't of Nashville & Davidson Cty.*, 36 S.W.3d 469, 475 (Tenn. Ct. App. 2000). The "[i]nterpretation of . . . ordinances is a question of law which we review de novo." *City of Knoxville v. Entm't Res., LLC*, 166 S.W.3d 650, 655 (Tenn. 2005).

Here, the trial court concluded that the JourneyPure Defendants' operation of the Voyage home did not violate the zoning ordinance. Although the use of the property "appear[ed] to fall within the definitions of 'transitional home' and 'group shelter,'" JourneyPure Defendants were "nonetheless entitled to operate as of right – with no special use permit or prior public notice – on the property" because the inhabitants of the Voyage home "constitute[d] a 'family' under the City's zoning ordinance." We agree.

The zoning ordinance includes a chart of uses permitted in each zoning district. As noted above, the zoning district at issue is designated as "RS-15, Single-Family Residential District." On the chart under RS-15, a single-family detached dwelling is a "[u]se permitted by right."

The zoning ordinance defines "family" in several ways. A "family" can include:

(a) an individual or two or more persons related by blood, marriage or adoption, maintaining a common household in a dwelling unit; or (b) a group of not more than four persons who are not related by blood, marriage, or adoption living together as a common household dwelling unit, or (c) *a group of not more than eight unrelated persons with disabilities, as defined by applicable federal law, which includes at least one (1) additional person (and may include a total of three (3) additional persons) acting as support staff or guardians, who need not be related to any of the persons with disabilities residing in the home, living together as a common household in a dwelling unit.*

(emphasis added). Under the Americans with Disabilities Act, a "disability" includes "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."[3] 42 U.S.C. § 12102(1)(A) (Supp. 2017). "Physical or

---

[3] The JourneyPure Defendants rely on the definition of "[h]andicap" under the Fair Housing Act. *See* 42 U.S.C. § 3602(h) (defining a handicap as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance"); *see also* 24 C.F.R. § 100.201(a)(2) (2018) (defining a "physical or mental impairment" to include, among other things, "drug addiction (other than addiction caused by current, illegal use of a controlled substance) and alcoholism"). Although the Fair Housing Act uses the term "handicap" rather than the term "disability," the terms have the same meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

mental impairment" includes such diseases as "drug addiction and alcoholism." 45 C.F.R. pt. 84, app. A (2016).

The plaintiffs do not contest the trial court's conclusion that the residents of the Voyage Group Home constituted a "family" under the zoning ordinance. The undisputed facts showed that, at any given time, approximately four to eight residents lived together as a common household. Two full-time staff members were required to be present at the group home, which could consist of a nurse practitioner, a licensed therapist, a clinical director, a residential manager, and unlicensed individuals referred to as recovery coaches. As for the home itself, Ms. Brumfield testified in her deposition that she did not notice any changes in the physical appearance of the home at 1306 S.E. Broad St. since AT Project opened it as a group home.

Because the residents at the group home constitute a family under the zoning ordinance and the RS-15 designation "permitted by right" a "[s]ingle-[f]amily detached" dwelling, we conclude that the Voyage Group Home did not violate the City's zoning ordinance. The fact that the group home might also fall under the definitions of a "group shelter"[4] or a "transitional home"[5] does not alter our conclusion. Although such uses are not permitted by right in the RS-15 designation, the use of the property falls within another category of uses, single-family detached, that is permitted by right. *See State ex rel. Morris v. City of Nashville*, 343 S.W.2d 847, 850 (Tenn. 1961) ("[Z]oning ordinances, because they deprive the owner of property use of his land which would otherwise be lawful, are to be strictly construed in favor of the property owner.").

In light of our conclusion that the use of the property does not violate the City's zoning ordinance, we do not reach the issue of whether the group home constitutes a "dwelling" as that term is defined under the Fair Housing Act.

---

[4] A "group shelter" is defined as

> A facility operated by a public or private agency, which may provide a program of services in addition to room and board to persons under continuous protection or supervision.

[5] A "transitional home" is defined as

> A residence used for the purposes of rehabilitating persons from correctional facilities, mental institutions, and alcoholic and drug treatment centers and operated by a public or private agency duly authorized and licensed by the state, which agency houses individuals being cared for by the agency and deemed by the agency to be capable of living and functioning in a community and which provides continuous professional guidance.

## III.

Based on the foregoing, we affirm the dismissal of the complaint. This case is remanded for any further proceedings as are necessary and consistent with this opinion.

_____
W. NEAL MᴄBRAYER, JUDGE